## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GREGORY WASHINGTON**                    **CIVIL ACTION NO:** 2:17-cv-08825-

**VERSUS**                                                     **SECTION: Jane Triche Millazo**

**SHELL OIL COMPANY and**                     **MAGISTRATE: Michael North,**
**METROPOLITAN LIFE**
**INSURANCE COMPANY**

           **Defendants**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### METROPOLITAN LIFE INSURANCE COMPANY'S
### RULE 12(b)(6) MOTION TO DISMISS

   **NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Gregory

Washington ("Washington") who in Opposition to Metropolitan Life Insurance Company's  Rule

12(b)(6) Motion to Dismiss,  respectfully avers:

**1. Objection to Court's consideration of the Release attached to MetLife's 12(b)(6) Motion.**

   The Complaint alleges a cause for discrimination pursuant to 38 U.S.C. §4311(c)(1),

a cause for liquidated damages pursuant to 38 U.S.C. §4323, a state law claim for intentional

infliction of emotional distress as against MetLife. MetLife moved for dismissal of those claims

pursuant to Rule 12(b)(6) asserting as alleged Washington's causes are not cognizable as a matter

of law. MetLife also claimed Washington having admitted several times in his Complaint that

MetLife is Shell's agent, Washington's execution of an Agreement with Shell waived his

USERRA claims alleged herein against both Shell and it agent because those claims alleged fall

within the scope of the Agreement.[1] Placing aside for the moment the fact MetLife is/was not a

party to the Agreement, the fact Shell declared post execution of the Agreement its intent "the

---
[1]MetLife Memo in Support, pg. 3-4  (Doc. 16- 2)

agreement does not affect **any** claim that Mr. Washington may have against Met-Life," the Complaint specifically alleges Washington had no intention to waive any of his USERRA claims alleged herein against Shell and/or MetLife, Washington did not attach the Agreement to his Complaint, MetLife attached it to its Rule 12(b)(6) Motion.[2]

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *See **Spivey v. Robertson**,* 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *See **In re Katrina Canal Breaches Litig**.,* 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." ***Collins v. Morgan Stanley Dean Witter***, 224 F.3d 496, (5th Cir. 2000) (internal quotation marks omitted). "Although the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." ***Kaye v. Lone Star Fund V (U.S.), L.P.,*** 453 B.R. 645, 662 (N.D. Tex. 2011).

The elements of Washington's cause pursuant to §4311(c)(1) are that Washington's military service was "a substantial or motivating factor" in the adverse employment action undertaken by MetLife, an employer as defined by statute; Washington's claim pursuant to 38 U.S.C. §4323 are that MetLife's alleged failure to comply with the provisions of USERRA was willful; Washington's cause against MetLife for intentional infliction of emotional distress are that with marked careless disregard for whether or not it had the right to do so, the defendant undertook actions with the intent to inflict severe emotional distress and/or the knowledge severe

---

[2] MetLife Memo in Support,  (Doc. 16-3)

emotional distress would be certain or substantially certain to result there from. The Agreement is not central to, is not necessary to establishing the elements of any cause of action Washington alleges against MetLife. Thus, the Agreement should not be considered part of the pleadings and/or nor considered in ruling on MetLife's 12(b)(6) motion. **_Collins v. Morgan Stanley Dean Witter,_** 224 F.3d 496, (5th Cir. 2000). Washington moves this Court to exclude the Release from consideration upon hearing on MetLife's Rule 12(b)(6) motion to dismiss.

## 2. Objection to the Court's consideration of MetLife's Affirmative Defense upon hearing on MetLife's Rule 12(b)(6) motion to dismiss.

Rule 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim on which relief may be granted. The Complaint alleges MetLife, an employer as defined by statute, exercised its unbridled power in a discriminatory manner in denying Washington's entitlement to a benefit of employment in violation of USERRA. Congress provides in 38 U.S.C. § 4323(a)(2) of USERRA that if any employer fails to comply with the provisions of the USERRA statute, the District Court, upon the filing of a petition by a person entitled to the benefits of the Act, has jurisdiction to compel compliance and to compensate for loss of wages or benefits. By attaching Agreement to its Rule 12(b)(6) Motion,[3] MetLife raises not a defect in the claim, but rather the mere presence of an affirmative defense. See Fed.R.Civ.P. 8(c). Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. **_Am. Surgical Assistants, Inc. v. Great W. Healthcare of Texas, Inc.,_** No. CIV.A.H-09-0646, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) (citing **_Hall v. Hodgkins,_** 305 F. Appx. 224, 228 n. 1 (5th Cir.2008)). Complaints need not contain _any_ information about defenses and may not be dismissed for that omission. See, e.g., **_Gomez v. Toledo_**, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The absence of

---

[3] MetLife Memo in Support,  (Doc. 16-3)

allegations in the Complaint relative to Shell's post execution written declaration of its intent "the agreement does not affect any claim that Mr. Washington may have against Met-Life" does not mean that the Complaint, as it stands, fails to state a claim under USERRA upon which relief can be granted as against MetLife. Washington is entitled to respond factually to MetLife's release defense – if and when properly raised in an answer and/ an appropriate Rule 12  motion for summary judgment – and will do so at that time. At this point however, Washington has no obligation to plead facts negating MetLife's release defense and MetLife's release defense cannot be adjudicated without Washington having an opportunity to do so.

In addition, the Complaint alleges a cause for rescission as against Shell not MetLife;[4] contains allegations in support of Washington' claim of error in the confection of the Agreement,[5] allegations the Agreement fails to unambiguously disclose or inform Washington that by signing the Agreement he would be waiving procedural and substantive USERRA rights that could be advanced in an appeal under the Plan,[6] allegations Washington did not sign the Agreement not because he believed that the rights provided in the Agreement were more beneficial than his USERRA rights.[7] Only when the plaintiff pleads itself out of court — that is, admits all the ingredients of an impenetrable defense — may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6). See ***Walker v. Thompson,*** 288 F.3d 1005 (7th Cir.2002). There simply can be no finding the Complaint admits all the ingredients of an impenetrable defense.  For these and other reasons, instead of allowing MetLife's filing of a pre-answer Rule 12(b)(6) motion to dismiss on the basis of an affirmative defense, the "mere presence of which is not an element of Washington's USERRA causes alleged against MetLife,

---

[4] Washington's Complaint, ¶¶ 138-172 (Doc.1)
[5] *Id.*
[6] *Id.*
[7] *Id.*

Washington moves this Court to enter an order directing MetLife to *first* answer the Complaint when otherwise appropriate; *second*, plead the affirmative defense in its answer if otherwise appropriate; and *third*, move for judgment on the pleadings under Rule 12(c) and/or Rule 56 motion for summary judgment, if and when otherwise appropriate, thereafter.

### 3. Objection to the Court's consideration of MetLife's Preemption Defense upon hearing on MetLife's Rule 12(b)(6) motion to dismiss

In reviewing a 12(b)(6) motion, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." ***In re Katrina Canal Breaches Litigation***, 495 F.3d 191, 205 (5th Cir. 2007). USERRA imposes liability on ***employers*** who discriminate against and "den[y] ***initial employment, reemployment, retention in employment, promotion,*** or ***any benefit of employment*** . . . on the basis of an individual's involvement in the uniformed services. 38 U.S.C. §§ 4311(a). "In order to allege a violation of USERRA, a plaintiff must establish that [he] was subject to an adverse employment action and that [his] military service was a motivating factor in that action." ***Arroyo v. Volvo Group N. Am., LLC,*** No. 12 C 06859, 2014 WL 4922523, at *14 (N.D.Ill. Sep. 30, 2014)) (citing ***Staub v. Proctor Hosp***., 562 U.S. 411, 131 S.Ct. 1186, 1190, 179 L.Ed.2d 144 (2011)). T

The Complaint alleges Washington's military service was "a substantial or motivating factor" in an adverse employment action undertaken by MetLife, an alleged employer as defined by statute; a cause for liquidated damages under 38 U.S.C. §4323 as against MetLife alleging its failure to comply with the provisions of USERRA was willful. MetLife argues "[a]lthough Washington attempts to assert USERRA claims against MetLife for its denial of his LTD claim, he cannot viably do so. When plan participants in effect seek "to recover benefits from a plan covered by ERISA, their *exclusive remedy* is provided by ERISA, in 29 U.S.C. § 1132 (a)(1)(B)." ***Hansen v. Continental Ins. Co***., 940 F.2d 971, 979 (5th Cir. 1991) (emphasis

added).[8] It should be noted, the <u>Complaint does not contain an affirmative allegation Shell's LTD</u>
<u>Plan is an ERISA-governed plan, nor does MetLife's 12(b)(6) motion offer any assertions of fact</u>
<u>establishing Shell's LTD Plan does not meet each of the criteria set out in 29 C.F.R. 2510.3-1(j);</u>
<u>offer any assertions of fact establishing Shell's LTD Plan is considered an ERISA-governed plan.</u>
The Compliant includes a prayer requesting the Court enter an order pursuant to 38 U.S.C. §4323
directing MetLife to compensate Washington by a paying an amount of damages equivalent to
the dollar amount of "benefits of employment" to which Washington was entitled but did not
receive by reason of MetLife's alleged violation of USERRA.[9] Nevertheless, MetLife  contends
"even if MetLife could be considered an employer under USERRA, Washington has still failed
to state a claim because, despite his attempts at artful pleading, his claim is in reality an
allegation that his LTD claim under his employer's ERISA-governed plan was improperly
denied—a claim for which ERISA provides the sole remedy."[10] Acknowledging the existence of
Washington's USERRA based causes of action alleged in  Complaint, MetLife yet attempts to
re-characterize Washington's cognizable claim under USERRA into one arising under ERISA in
order to raise a federal-preemption defense in a  pre-answer Rule 12(b)(6) motion to dismiss.
"Unless the complaint itself establishes the applicability of a federal-preemption defense—in
which case the issue may properly be subject of a Rule 12(b)(6) motion—a defendant should
ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56
motion for summary judgment." (footnote omitted)" ***Fisher v. Halliburton,*** 667 F.3d 602, 610
(5th Cir. 2012). The Complaint amply establishes Washington sues MetLife not as a former
employee/participant of Shell's LTD Plan, but as a veteran asserting special rights bestowed

---

[8] MetLife Memo in Support,  pg. 15 (Doc. 16-2)
[9] Washington's Complaint, pg. 61 (Doc.1)
[10] MetLife Memo in Support,  pg/. 15 (Doc. 16-2)

upon him in furtherance of a federal policy to protect those who have served in the Armed Forces. *McKinney v. Mo.-Kan.-Tex.R.R. Co., 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958)*. For these and other reasons, Washington moves this Court to enter an order directing MetLife to *first* answer the Complaint when otherwise appropriate; *second*, plead its federal-preemption defense as to Washington's USERRA claims in its answer as otherwise appropriate; and *third*, move for judgment on the pleadings under Rule 12(c) and/or Rule 56 motion for summary judgment, if and when appropriate, thereafter.

**4. Washington's request for additional time to conduct discovery**

Though Washington objects herein to this Court's consideration of the Release attached to upon hearing on MetLife's Rule 12(b)(6) motion, when "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56", and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Rule 12(d) requires only that the non-movant be given notice that "the district court could treat the motion as one for summary judgment, not [whether] the court would in fact do so." ***Washington v. Allstate Ins. Co.,*** 901 F.2d 1281, 1284 (5th Cir.1990) (citing Isquith, 847 F.2d at 193). "A non-moving party receives adequate notice when it is aware that the movant has placed matters outside the pleadings before the district court for its review." ***Guiles v. Tarrant County Bail Bond Bd.,*** 456 Fed. App'x 485, 487 (5th Cir. Jan. 5, 2012). Courts have also found that the framing of a motion to dismiss in the alternative as one for summary judgment provides adequate notice for purposes of Rule 12(d). See ***Tremont LLC v. Halliburton Energy Services, Inc.,*** 696 F.Supp.2d 741, 853 (S.D. Tex. 2010) (citations omitted); ***Al-Juburi v. Chertoff***, 3:06-CV-1270-D, 2007 WL 2285964, *4 (N.D. Tex. Aug. 9, 2007).

Here, MetLife moved for dismissal claiming Washington's alleged causes are not cognizable as a matter of law based solely on his invocation of Rule 12(b)(6). MetLife placed matters outside of the pleadings before the Court for its review by attaching evidence to its motion, to which Washington tendered timely objection on two separate and distinct grounds. First, the Agreement is not central, is not necessary to the establishment of the elements of any of Washington's claims as alleged against MetLife, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, (5th Cir. 2000). Second, orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. ***Am. Surgical Assistants, Inc. v. Great W. Healthcare of Texas, Inc***., No. CIV.A.H-09-0646, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) (citing *Hall v. Hodgkins,* 305 F. Appx. 224, 228 n. 1 (5th Cir.2008)). Moreover, in light the fact USERRA's protections supersedes any substantive contractual terms that reduce, limit, or eliminate the rights afforded by USERRA. 38 U.S.C. § 4302(b), the fact only known USERRA rights which are already in existence may be waived." H.R. Rep. No. 103-65 (1994), the fact Washington could waive only know USERRA rights which are already in existence provided he *believed* the consideration he was to receive for waiving those rights was more *beneficial* than pursuing their rights through the courts." *See* ***Wysocki v. Int'l Bus. Mach. Corp.,*** 607 F.3d 1102, 1107 (6th Cir.2010), MetLife is/was not a party to the Agreement,  Shell declared post execution of the Agreement its intent "the agreement does not affect **any** claim that Mr. Washington may have against Met-Life," the fact Washington advances a cause for rescission as against Shell alleging error, there are a myriad number of factual issues relative to the Agreement, undeveloped at this point and not reflected in the record at this point, that can only be developed through discovery. Washington has not had an opportunity to conduct discovery; does submit his own evidence in response to

MetLife's 12(b)(6) motion. MetLife's Release defense simply cannot be adjudicated without Washington having an opportunity to do so. Washington would be severely prejudiced by this Court's conversion of MetLife's motion into one for summary judgment.

In light of each of the foregoing objections outlined above, should the Court, in its discretion, elect to consider "matters outside the pleadings" attached to MetLife's 12(b)(6) motion and/or elect to treat MetLife's 12(b)(6) motion as one for summary judgment under Rule 56," Washington request this Court the he be afforded a reasonable opportunity to conduct discovery and present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

## ARGUMENT & AUTHORITIES

### A. Washington's claims alleged against MetLife are not  barred

On September 9, 2016, MetLife denied ("Denial Letter") Washington's claim for benefits arising from Washington's disabling PTSD/depression conditions allegedly based in part on the "plan exclusion for service in the armed forces of any nation, **which was not a basis for the original determination."[11]** The Denial Letter stated that [b]ecause Mr. Washington's claim was denied **in whole or in part** he may appeal this decision made regarding his psychiatric conditions with regard to the Plan's war ***or*** service in the armed forces of any nation exclusions by sending a written request for appeal to MetLife."[12] Had MetLife's initial claims level denial of Washington's disabling conditions, PTSD/depression, been based on its application of claim of the war exclusion, Washington would have already exhausted his appeal rights with respect to those disabling conditions, there would have been no basis to invite Washington to file another appeal of MetLife's application of the war exclusion.[13] The word "**or**" is defined to mean "the equivalent or substitutive character of two words or phrases." *Merriam-Webster.com.* 2017

---

[11] Washington's Complaint, ¶¶ 66, pg. 15 (Doc.1)
[12] Washington's Complaint, ¶¶ 70, pg. 16 (Doc.1)
[13] Washington's Complaint, ¶¶ 67, pg. 16 (Doc.1)

https://www.merriam-webster.com (28 December 2017.). By extending the right to appeal MetLife's application of the war *or* Armed Services Exclusion in denying Washington's claim, MetLife tacitly acknowledged it application of the war exclusion in denying Washington's claim on September 9, 2016.[14] In so doing, MetLife's Denial Letter created the inference MetLife could have indeed denied Washington's claim for disability benefits based on its application of the war exclusion regardless of its application Shell's Armed Services Exclusion or Washington's military status.[15] Washington filed an appeal from MetLife's September 9, 2016 decision advancing arguments in opposition to MetLife's application of both the war or Armed Services Exclusion post execution of the Agreement.[16]

MetLife responded to Washington's appeal with its Second Denial Letter on May 1, 2017 specifically declaring that "in denying Mr. Washington's claim [MetLife] is no longer relying in any way on the Plan's exclusion for disabilities that result from or are caused or contributed to by "war, insurrection, or rebellion ...;" its denial of Washington's claim for benefits on September 9, 2016 was now based "[solely] upon the Plan's entirely separate and independent exclusion for disabilities that result from or are caused or contributed to by service in the armed forces of any nation;" declaring it had "***not denied or upheld the denial of Mr. Washington's claim based upon the Plan's Pre-Existing condition [provisions] and has not relied and does not rely in any way upon that Plan provision. Any discussion of the Plan's pre-existing condition [provisions] is not relevant the adjudication of Mr. Washington's claim.***"[17]

The Second Denial Letter helped to explain why, in the face of seven letters sent during

---

[14] Washington's Complaint, ¶¶ 70, pg. 16 (Doc.1)
[15] The issue under USERRA was not whether, based on MetLife's application Shell's Armed Services Exclusion, Shell's LTD Plan does not provide disability benefits for Washington's claimed disabling conditions, but rather whether MetLife would have indeed denied disability benefits under the Plan for Washington's claimed disabling conditions regardless of MetLife's application Shell's Armed Services Exclusion or Washington's military status. ***Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc.,*** 473 F.3d 11, 20 (1st Cir. 2007).
[16] Washington's Complaint, ¶¶ 73, pg. 17 (Doc.1)
[17] Washington's Complaint, ¶¶ 94, pg. 23 (Doc.1)

the pendency of the initial appeal, MetLife refused to offer any explanation for its denial based in part on its application of the armed services exclusion on September 9, 2016.[18] The reasons offered with its Second Denial Letter for upholding its application of the armed services were little more than pretexts offered to disguise its willful violation of USERRA. MetLife had no basis in fact or law for refusing to comply with USERRA in denying Washington's entitlement to benefits under the LTD Plan on September 9, 2016.[19] That MetLife did an about face with no reason offered therefore, MetLife's about face signals MetLife knew on September 9, 2016 of its wrongful application of the war exclusion to Washington's claim; MetLife applied the war exclusion and extended Washington the right to appeal its application of the war **or** Armed Services Exclusion ostensibly to create the inference it relied on the war exclusion in making its decision denying Washington's claim, to create the inference Washington's military status was not a **motivating factor** for MetLife's denial of Washington's claim on September 9, 2016, to create the inference MetLife would have denied Washington's claim regardless of MetLife's application Shell's Armed Services Exclusion, to obfuscate the very existence of any USERRA protections arising from its denial on September 9, 2016.[20]

Between MetLife's Denial Letter and Second Denial Letter, Shell directed an Agreement to Participate in a Special Severance Plan ("Agreement") to Washington's attention.[21] Without benefit of counsel's review of the same, Washington executed the Agreement on December 1, 2016 accepting $29,739.00 in exchange for terminating his employment with Shell effective December 31, 2016. When counsel did receive a copy of the Agreement post execution, upon review of the same, counsel directed an email to Shell seeking to rescind the Agreement.

---

[18] Id.
[19] Washington's Complaint, ¶¶ 105-115, pg. 23-29 (Doc.1)
[20] Washington's Complaint, ¶¶ 159, pg. 43 (Doc.1)
[21] Washington's Complaint, ¶¶ 184, pg. 49 (Doc.1)

Counsel's email stated it appeared the "scope of the Agreement may well include a waiver of Mr. Washington's substantive right to bring a claim in a court of competent jurisdiction against Shell arising in any way from his soon to be filed appeal of Met Life's decision dated September 9, 2016 and/or a waiver of Mr. Washington's substantive right to bring a claim directly against Shell pursuant to USERRA in a district court of the United States. Counsel stated "to the extent such waiver of either of the foregoing claims is contemplated therein, this letter serves as Mr. Washington's notice revoking the Agreement **based on error effective this date**." Shell responded that the time frame to rescind had already elapsed, declaring that "[w]hile the agreement does not affect any claim that Mr. Washington may have against Met-Life, it is our position that it bars any discrimination or other employment-related claims against Shell, including any claim under USERRA."

Shell established Shell Oil Company's Comprehensive Welfare Benefits Plan 801 ("the Plan") for the purpose of providing the **benefits** under and coordinating the administration of the Component Programs forming part of The Plan.[22] Shell is the Plan Administrator for the Plan. Shell Oil's Long Term Disability Plan ("Shell LTD Plan"), is a Component Program of the Plan underwritten by and funded with a LTD Plan adopted by MetLife.[23] Shell, in its capacity as Plan Administrator of the Plan and/or the Plan, in accord with terms of the Plan, delegated the authority, duty and responsibility of Plan Administrator with respect to the operations of Shell's LTD Plan unto MetLife including the administration of claims, the authority to authorize payment of benefits, the review of denied or modified claims, and the discretion to decide matters of fact and to interpret Plan provisions and the right to "determine all questions concerning eligibility for benefits which determination will be conclusive and binding on all

---

[22] Washington's Complaint, ¶¶ 8, pg.3 (Doc.1)
[23] Id.

12

parties."[24] Where two entities each exercise certain control over an employee's terms and conditions of employment, such as where the Plan Administrator delegates the power, authority, right to determine all questions concerning eligibility for benefits which determination will be conclusive and binding on all parties, both entities are considered to be the "employer" and share responsibility for compliance under USERRA. 20 CFR §1002.37."[25] Shell, Washington's then employer who paid his salary and wages was considered an employer for purposes of USERRA, MetLife, the other entity to whom the employer or plan sponsor delegated substantive decision making authority with respect to the award of benefits under Shell's LTD Plan, was considered an employer for purposes of USERRA.

The Agreement states the Special Severance Plan for Certain Contracts and Procurement Staff Assigned to Projects and Technology in Various Locations from which the severance proceeds were paid "is a special plan initiated by [Shell] at its cost and it is not a part of [Washington's] regular or normal salary or benefit plans as an employee."[26] At execution of the Agreement, the proper party in an ERISA based claim for benefits under Shell's LTD as well as MetLife, the person with the authority for plan decision-making and an obligation to pay benefits that are owed.[27] Consistent with the fact Shell declared post execution of the Agreement "the agreement does not affect any claim that Mr. Washington may have against Met-Life," neither Shell Oil Company's Comprehensive Welfare Benefits Plan 801 nor MetLife are identified as parties to the Agreement, the Agreement fails to unambiguously disclose and/or inform Washington he would be waiving any of his procedural rights to enforce any protections believed

---

[24] Washington's Complaint, ¶¶ 12-16,  pg. 4-5 (Doc.1)

[25] Washington's Complaint, ¶¶ 154,  pg. 42 (Doc.1)

[26] MetLife Memo in Support,  (Doc. 16-3)

[27] Musmeci v. Schwegmann Giant Super Mkts., Inc., 332 F.3d 339, 349-50, 30 EBC 1833 (5th Cir. 2003)(113 PBD, 6/13/03; 30 BPR 1322, 6/17/03) (considering decisions in the Sixth, Seventh, (considering decisions in the Sixth, Seventh, Eighth and Eleventh Circuits and explaining that an employer is a proper party only if it actually made the decision to deny benefits and is the plan administrator or sponsor)

to extend to his appeal of MetLife's denial of benefits under the Plan, thereby eliminating in any substantive protections Washington's could advance as result of MetLife's denial of benefits as against the Plan and/or against MetLife subsequent thereto.[28]

At execution of the Agreement, Shell and MetLife each owed non-delegable duties of an employer under USERRA; Shell knew of Washington's claim for disability benefits made under the Shell's LTD Plan, knew of MetLife's denial of Washington's claim for benefits under the Shell's LTD Plan based on its application of the Plan's war or service in the armed forces of any nation exclusions, knew Washington's right appeal MetLife's decision of September 9, 2016 under Shell's LTD Plan remained viable.[29] Consistent with the fact Shell did not include MetLife a  party to the Agreement; Shell's declaration "the agreement does not affect any claim that Mr. Washington may have against Met-Life," the Agreement fails to unambiguously disclose and/or inform Washington he would be waiving any of his procedural rights to enforce any protections believed to extend to his appeal of MetLife's denial of benefits under the Plan, thereby eliminating in any substantive protections Washington's could advance as result of MetLife's denial of benefits as against the Plan and/or against MetLife subsequent thereto.[30]

That Shell knew of Washington's claim for disability benefits made under the Plan, knew of MetLife's denial of Washington's claim for benefits under the Plan based on its application of the Plan's war or service in the armed forces of any nation exclusions, knew Washington's right appeal its MetLife's decision of September 9, 2016 under the Plan remained viable at execution of the Agreement, Shell did not identify MetLife as a party to the Agreement, Shell declared in fact "the agreement does not affect **any** claim that Mr. Washington may have against Met-Life," Shell knew or should have known Washington would not have otherwise contracted had he

---

[28] MetLife Memo in Support,  (Doc. 16-3); Washington's Complaint, ¶¶ 166, pg. 45 (Doc.1)
[29] Washington's Complaint, ¶¶ 164, pg. 45 (Doc.1)
[30] Washington's Complaint, ¶¶ 165, 166, 167 pg. 45 (Doc.1)

known it meant the elimination of his procedural and substantive rights to enforce USERRA protections believed to extend to his claim for benefits under the Plan, eliminate Washington's right to enforce substantive protections under USERRA as against MetLife subsequent thereto.[31] *See* La. Civ. Code art. 1949, Revision Comments—1984, cmts. (b) & (c) (West 2012). To the extent as MetLife maintains that by executing the Agreement, Shell and Washington both intended to waive his procedural right to present a USERRA claim arising from MetLife's its denial of Washington's claim under the Plan and/or his right to seek to enforce USERRA protections believed to extend to his claim for benefits and/or to prevail on any such claim arising from MetLife's administration of the Plan, both Shell and Washington were individually be mistaken, in which case both parties are clearly aware the matter in error was the cause of their mutual obligations, thus vitiating the consent of both parties.

**B. MetLife is an employer under USERRA.**

MetLife moves for dismissal pursuant to Rule 12(b)(6) of Washington's USERRA claims alleged against it premised solely on the assertion MetLife is not an employer as defined by 38 U.S.C. §4303(4)(A). Usually, the starting point with such an assertion would be to determine if in fact Congress has spoken on the precise question at issue — here, whether as defined at 38 U.S.C. §4303(4)(A) the term "employer" reaches MetLife's exercise of unbridled power over Shell's LTD Plan delegated to it by Shell or the Plan Sponsor denying Washington's claim for benefits of employment in a discriminatory manner in violation of USERRA. Under settled rules, the plain language of the statute in question is deemed the most reliable indicator of Congressional intent. ***Gustafson v. Alloyd Corp.***, 513 U.S. 561, 570, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). If Congress's intention is clear, the inquiry ends there. ***INS v. Cardoza-***

---

[31] While "[t]estimonial or other evidence may not be admitted to negate or vary the contents of [a writing], . in the interest of justice, that evidence may be admitted to prove such circumstances as a vice of consent. " La. Civ.Code art. 1848; Harnischfeger Sale Corp. v. Sternberg Co., 179 La. 317, 327, 154 So. 10, 13 (1934).

*Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). MetLife's Memorandum in support offers nothing remotely evidencing MetLife analyzed much less reviewed the plain language of the statute in question before filing the instant motion.

To the extent MetLife reasoned Congressional intent could not be gleaned from its cursory review of the plain language of the statute, MetLife's next stop should have been DOL's regulations. Implicit in Congress's grant of authority to DOL ([t]he Secretary (in consultation with the Secretary of Defense) may prescribe regulations implementing the provisions of this chapter with regard to the application of this chapter to States, local governments, and private employers. 38 U.S.C. § 4331(a)) to issue regulations is its delegation of authority to DOL to address the issue presented herein. ***Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.,*** 467 U. S. 837, 842-843 (1984). In that case, [MetLife could not] "substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* Eschewing any analysis of the plain language of the statute in question deemed the most reliable indicator of Congressional intent, purposefully neglecting analyze much less the specific regulation defining the term "employer" as used throughout USERRA's accompanying regulations, MetLife's offers instead a series district court rulings, each factually distinguishable from the issue presented herein and—in any event—not binding authority in this circuit.[32] Premised solely on those rulings, MetLife claims it is not an "employer" for purposes of USERRA because "Washington makes no allegations that MetLife performed these specific employment-related responsibilities—nor could he. MetLife was not and is not Washington's employer." "Likewise, here, MetLife has no "ownership of, or responsibility" for Shell's "employment relationship" with Washington and, thus, did not have "authority to 'control' [Washington's] employment." "Here, MetLife had no such authority and

---

[32] MetLife Memo in Support,  pg. 14-18 (Doc. 16-2)

absolutely no control over Washington's employment status. Washington does not allege that it did—nor could he. MetLife merely administers claims seeking disability benefits under Shell's LTD plan."[33] That's it folks; the entire basis upon which MetLife's assertion it is not an employer as defined by USERRA rests.

**1. USERRA's plain language demonstrates MetLife is an "employer" under the statute.**

The first step in determining the meaning of a statute is to examine the statute's plain language. In doing so, [Court's] look at `the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" ***United States v. Andrews,*** 441 F.3d 220, 222 (4th Cir.2006)(internal citation omitted) (quoting ***Robinson v. Shell Oil Co.,*** 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). USERRA provides a multi-tiered and "comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." ***Morris-Hayes v. Bd. of Educ.,*** 423 F.3d 153, 160 (2d Cir.2005) (discussing USERRA in the context of Section 1983 claims). [Courts] analyze this comprehensive scheme holistically, careful to interpret each section in a manner that does not render any other sections inconsistent or superfluous. *See* ***Soliman v. Gonzales***, 419 F.3d 276, 283 (4th Cir.2005).

USERRA defines an "employer" to mean, "[e]xcept as provided in subparagraphs (B) and (C),[34] the term "employer" means *any* person, institution, organization, *or other entity* that pays salary *or* wages for work performed *or* that has control over employment opportunities, including— (i) a person, institution, organization, *or other entity* to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. §4303(4)(A). Read naturally, the words "*any''* means "one or some indiscriminately of whatever kind."

---

[33] MetLife Memo in Support,  pf. 14-18 (Doc. 16=2)
[34] Subparagraphs (B) and (C) are not relevant to the issue presented herein.

Webster's Third New International Dictionary 97 (1976). The word "**or**" is defined to mean "the equivalent or substitutive character of two words or phrases." *Merriam-Webster.com*. 2017 https://www.merriam-webster.com (28 December 2017.) Since phrases "any person . . . that pays salary or wages for work performed" and "that has control over employment opportunities" are separated by the word *or*, phrases "any person, institution, organization, or other entity that pays salary or wages for work performed" and  "any person, institution, organization, or other entity that has control over employment opportunities" are equivalent. Since the phrase "that has control over employment opportunities" includes "a person, institution, organization, *or other entity* to whom the employer has delegated the performance of employment-related responsibilities," "a[] person, institution, organization, or other entity that pays salary or wages for work performed" is equivalent to "a person, institution, organization, *or other entity* to whom the employer has delegated the performance of employment-related responsibilities." When read naturally, the statutory definition of an employer means (1.) *any* person, institution, organization, or other entity that pays salary or wages for work performed, (2.) *any* person, institution, organization, or other entity that has control over employment opportunities-- including— (3) a person, institution, organization, or *other entity* to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. §4303(4)(A).

Without any analysis of the plain language of the statute, MetLife urges this Court to read the words "other entity that has control over employment opportunities" or "other entity to whom the employer has delegated the performance of employment-related responsibilities" as defining the term "employer" only so long as they possess authority to carry out or affect personnel decisions, like hiring, training, and firing. MetLife adopts this tortured reading of the statue from a series of district court ruling cited in its Memorandum, each factually distinguishable and—in

any event—not binding authority in this circuit. A cursory review the plain language in 38

U.S.C. §4303(4)(A) and the cited rulings reveals the legal flaw in MetLife's proffered reasoning.

USERRA imposes liability on *employers* who discriminate against and "den[y] *initial employment, reemployment, retention in employment, promotion,* or *any benefit of employment* . . . on the basis of an individual's involvement in the uniformed services. 38 U.S.C. §§ 4311(a). Each of cases cited in MetLife's Memorandum involved the denial of a protected right, each involved either the discriminatory denial of *initial employment, reemployment, retention in employment or promotion protected* under USERRA; neither involved the denial of a *benefit of employment* like at issue herein. Collectively, the rulings stand for the proposition that in order to withstand a Rule 12(b)(6) motion that petitioner need allege sufficient facts to establish the alleged "employer" for purposes of USSERRA, i.e., any person who pays wages and salary for work performed, any person that has control over employment opportunities or a person to whom the employer has delegated the performance of employment-related responsibilities, possessed the requisite authority over the particular USERRA right at issue affect the denial of that right in violation of USERRA. In other words, if the protected right alleged to have been denied in violation of USERRA was the right to *initial employment, reemployment, retention in employment, promotion,* the petitioner need allege sufficient facts to establish a person who pays wages and salary for work performed or a person that has control over employment opportunities or a person to whom the employer has delegated the performance of employment-related responsibilities possessed the requisite authority over the particular USERRA right to affect its denial in violation of USERRA. Since the phrase "that has control over employment opportunities" includes "a person, institution, organization, *or other entity* to whom the employer has delegated the performance of employment-related responsibilities,"

"a[] person, institution, organization, or other entity that pays salary or wages for work performed" is equivalent to "a person, institution, organization, *or other entity* to whom the employer has delegated the performance of employment-related responsibilities." the same proposition distilled from the rulings cited in MetLife's Memorandum holds true with respect to an employer's denial of "*any benefit of employment* in violation of USERRA.

USERRA defines the term "benefit", "benefit of employment", or "rights and benefits" means the *terms, conditions, or privileges of employment*, including any advantage, profit, privilege, gain, status, account, or interest (*including wages or salary for work performed*) *that accrues by reason of an employment contract or agreement or an employer policy, plan,* or practice *and includes rights and benefits* under a . . . *health plan, insurance coverage* . . ." Washington paid for LTD coverage under the LTD Plan, the disability benefits provided for under the LTD Plan constitute a term, condition, or privilege of employment, and are benefits of employment within the meaning of USERRA §4303(2).[35] MetLife's individual liability as an employer for purposes of USERRA turns on the degree of control the employer or plan sponsor has delegated to MetLife over the particular "benefit of employment" at issue.

The Complaint specifically alleges Shell, in its capacity as Plan Administrator of the Plan and/or the Plan, in accord with terms of the Plan, delegated the authority, duty and responsibility of Plan Administrator with respect to the operations of Shell's LTD Plan unto MetLife including the administration of claims, the authority to authorize payment of benefits, the review of denied or modified claims, and the discretion to decide matters of fact and to interpret Plan provisions and the right to "determine all questions concerning eligibility for benefits which determination will be conclusive and binding on all parties."[36] Where two entities each exercise certain control

---

[35] Washington's Complaint, ¶¶ 95-97 pg. 23 (Doc.1)
[36] Washington's Complaint, ¶¶ 84-89, pg. 21 (Doc.1)

over an employee's terms and conditions of employment, such as here where the Plan Administrator delegates the power, authority, right to determine all questions concerning eligibility for benefits which determination will be conclusive and binding on all parties, both entities are considered to be the "employer" and share responsibility for compliance under USERRA. 20 CFR §1002.37."  Shell, Washington's then employer who paid his salary and wages was considered an employer for purposes of USERRA, MetLife, the other entity to whom the employer or plan sponsor delegated substantive decision making authority with respect to the award of benefits under Shell's LTD Plan, was considered an employer for purposes of USERRA.

Even could it be argued statute is silent or ambiguous in this context, and it cannot, the oft cited passage from the Supreme Court opinion in ***Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc***., 467 U. S. 837, 842-843 (1984) provides:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

"The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress."*Morton v. Ruiz,* 415 U. S. 199, 415 U. S. 231 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit, rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.   ***Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc***., 467 U. S. 837, 842-843 (1984)

USERRA provided DOL with this authority [38 U.S.C. § 4331(a).] to issue regulations implementing USERRA. DOL has issued regulations implementing USERRA with regard to private employers and employees after a notice and comment period.  *See* 20 C.F.R. § 1002 *et seq.* An agency submitting a final rule document for publication shall prepare a preamble that may include (1) a discussion of the background and major issues involved; (2) in the case of a final rule, any significant differences between it and the proposed rule; (3) a response to substantive public comments received; and (4) any other information the agency considers appropriate. 1 C.F.R. §18.12). The preamble information published in the *Federal Register* with a final rule is the primary published source for its "regulatory history" and one of the few means to determine "regulatory intent." 1 C.F.R. §18.12).

The Preamble to USERRA Final Regulations ("Preamble") includes DOL's response to a comment received from the Equal Employment Advisory Council concerning the breadth of USERRA's definition of ``employer'.' Citing case law under various civil rights statutes holding that individuals cannot be held personally liable for  statutory violations if the individual does not independently meet the statute's definition of a covered ``employer,'' the EEAC proposed the regulatory definition of employer explicitly exclude from liability for statutory violations individuals, such as managers or supervisors, who  are not directly responsible for paying wages to employees.[37]  The Department declined to adopt the position that individual supervisors and managers [who are not directly responsible for paying wages to employees] should be and/or are excluded from the regulatory definition of ``employer'' under USERRA.[38] The DOL explained USERRA's definition of ``employer'' is quite different and much broader than that other discrimination statues; stated USERRA thus imposes liability for violations upon ``**any person** *

---

[37] USERRA Preamble, 70 Fed.Reg. 75,246 -75,248 (Dec. 19, 2005).
[38] Id.

* * [who] * * * has  control over employment opportunities" including ``a person * * * to  whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. 4303(4)(A)(i).[39] In support of its position, the DOL pointed to at least two court decisions where, based on the foregoing definition, the court construed USERRA's definition of ``employer'' as including supervisors and managers in appropriate cases.  See Brandasse v. City of Suffolk, 72 F.Supp.2d  608, 617-18 (E.D.Va. 1999); Jones v. Wolf Camera, Inc., 1997 WL 22678 (N.D.Tex. 1997).[40] The DOL further observed _"[t]hose courts that have found no individual liability have done so not because the language of the statute precludes it, but rather because the facts and circumstances of the case do not warrant the imposition of individual  liability_.[41]

The Preamble includes DOL's response to one comment received from an  association of third-party employee benefit administrators and one from a trade association of firms providing health  insurance  products  to  employers  both  concerning  the  statute's  broad  definition  of ``employer" and  its implications in the employee benefits area.[42] Each commenter expressed a concern USERRA's definition of ``employer" was so broad as to impute liability to third parties to whom employers had delegated only ministerial responsibilities for employee benefits plans. The DOL responded stating Congress intended that the definition of employer be broad enough to `apply to insurance companies that administer employers' life, long-term disability, or health plans, so that such entities cannot refuse to modify their policies in order for employers to comply  with  requirements  under  [USERRA]." S. Rep. No. 158, 103d Cong., 2d Sess. 42 (1993).[43] The  Department  agreed  with  the  commenter's  however  that  **entities  to  whom employers  or  plan  sponsors  have  delegated  purely  ministerial  functions  regarding  the**

---

[39] Id.
[40] Id.
[41] Id.
[42] Id.
[43] Id.

**administration of employee benefits  plans are not intended to be covered by USERRA's definition of ``employer.''[44]** Implicit in DOL response to an  association of third-party employee benefit administrators and a trade association of firms providing health insurance products is the fact third-party employee benefit administrator or a firm providing health insurance products to employers to whom employers or plan sponsors have delegated sustentative control over certain "benefit of employment" are employers for purposes of USERRA. DOL's reading of the statute is reinforced by the USERRA's regulations that define the term employer to include "[a] person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities, except in the case that *such entity* has been delegated functions that are purely ministerial in nature, such as maintenance of personnel files or the preparation of forms for submission to a government agency." § 1002.5(d)(1)(I).

Without specifically addressing language in the Preamble addressing the issue presented herein or referencing DOL regulations specifically addressing the definition of the term employer, MetLife points to the regulations [*See, See* 20 C.F.R. §§ 1002.163–.171]  discussing health plans to asserting that becasue these sections differentiate between the employer that offers such plans and the administrator that oversees them, this distinction indicates that administrators of employee benefit plans are not viewed as employers by the agency charged with administering USERRA.[45] Nonsense. The "What definitions apply to USERRA" section defines the term employer as used throughout the regulations at 20 CFR 1002.5; the term "employer" is defined in clear and unambiguous language at 20 CFR 1002.5(d)(1)(i). In fact, the Preamble states *"[t]wo commenter's expressed concern that if an **insurance carrier**  imposes an exclusion or waiting period upon a returning employee in  violation of section 4317(b) of*

---

[44] Id.
[45] MetLife Memo in Support,  pg. 19 (Doc.16-2)

USERRA, implemented by section 1002.168(a), the employer could be liable for funding health claims that should have been paid by the insurance carrier. The commenter's suggested that reinstatement be limited to those circumstances in which coverage is available through the plan's insurance carrier or, in the alternative, that the employer should not be liable for insurer's practices that violate USERRA. Section 4317(b) of USERRA requires reinstatement of employer-provided insurance upon reemployment, and section 1002.168(a) makes no exceptions to that reinstatement requirement other than the limited exceptions contained in 4317(b) itself. *__The additional exceptions proposed by the commentators are not appropriate, because they would reduce the protections provided by USERRA. Employers that utilize third-party insurance plans to provide health coverage for employees are obliged to negotiate coverage that is compliant with USERRA to avoid possible liability for failure to properly reinstate coverage upon reemployment. In this context, USERRA's legislative history suggests there are circumstances in which an insurance company could be considered an employer under USERRA and could not ``refuse to modify their policies in order for employer's (sic) to comply with [Section 4317 of USERRA].'' S. Rep. No. 103-158, at 42 (1993)''__*[46] DOL makes clear there are indeed circumstances in which an insurance company could be considered an employer under USERRA.

    MetLife then points to DOL regulations addressing the context in which two entities could be considered employers of the same individual [20 CFR §1002.37], the regulations focused on whether a hiring hall could be considered an "employer" arguing MetLife is not an employer under the statute because Washington did not report to MetLife as part of his employment with Shell, MetLife had no authority with respect to hiring Washington or making

---

[46] USERRA Preamble, 70 Fed.Reg. 75,246 -75,248 (Dec. 19, 2005

his job assignments,[47] More nonsense. MetLife's individual liability as an employer for purposes of USERRA turns not on whether Washington reported to MetLife as part of his employment with Shell, whether MetLife had authority with respect to hiring Washington or making his job assignments, but rather on the fact the employer or plan sponsor having delegated unto MetLife unbridled power and control of employee benefits under Shell's LTD Plan, the fact MetLife in fact exercised its unbridled power in a discriminatory manner to deny Washington's entitlement to a benefit of employment in violation of USERRA.

Again, the "What definitions apply to USERRA" section defines the term employer as used throughout the regulations at 20 CFR 1002.5; the term "employer" is specifically defined in clear and unambiguous language at 20 CFR 1002.5(d)(1)(i). "[W]here two entities each exercise certain control over an employee's terms and conditions of employment both entities are considered to be the "employer" under USERRA. 20 CFR §1002.37. Consistent with 20 CFR §1002.37, Shell, the person who paid Washington's wages for work performed, was an employer as defined by statue; MetLife, a third third-party employee benefit administrator to whom substantive decision making regarding employment-related responsibilities had been delegated, was an employer as defined by statue. The Preamble reflects DOL's intention the statutory definition of the term employer be read expansively to include a third-party employee benefit administrators and firms providing health insurance products to employers to whom an employer or plan sponsor has delegated substantive decision making regarding plan benefits within its reach. 20 CFR 1002.5 (d)(1)(I).

When read naturally, the statutory definition of an employer means (1.) *any* person, institution, organization, or other entity that pays salary or wages for work performed, (2.) *any* person, institution, organization, or other entity that has control over employment opportunities--

_____

[47] MetLife Memo in Support,  pg. 19 (Doc.16-2)

including— (3) a person, institution, organization, or ***other entity*** to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. §4303(4)(A). The Preamble, accompanying regulations specifically addressing the breathe and scope of the term "employer" leave no doubt Congress intended the statue be read to include MetLife within the definition of an employer for purposes of USERRA. ". . . If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [and it does, the courts] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." ***United States v. Shimer***, 367 U. S. 374, 367 U. S. 382, 383 (1961).

**2. USERRA's legislative history supports the conclusion MetLife is an "employer" under the statute.**

MetLife claims that "[b]eyond his conclusory statements that MetLife is an employer under USERRA, Washington cites to only one authority to support his allegations—a Senate Committee Report. *See* Pl.'s Civil Compl., ¶ 109, at 27 (Doc. No. 1)."[48] To the contrary, Washington maintains clear and unambiguous langue in the statue can be read to include any person who pays wages and salary for work performed, any person that has control over employment opportunities or a person to whom the employer has delegated the performance of employment-related responsibilities within the scope of the definition of an employer for USERRA purposes. Consistent with the plain reading of the statute, the Complaint contains no less than eighteen allegations of fact offered in support of a cognizable legal theory, based on the plain reading of the statue, MetLife is an "employer" for purposes of USERRA. *See, e.g.*, Pl.'s Civil Compl., ¶¶ 5 (describing the series of events and circumstances under which MetLife is considered and/or became an "employer" for purposes of USERRA), 8 (same), 9 (same), 10

---

[48] MetLife Memo in Support,  pg. 20, (Doc. 16-2)

(same), 12 (same), 13 (same), 14 (same), 15 (same), 16 (same), 83 (same), 84 (same), 85 (same), 86 (same), 87 (same), 88 (same), 89 (same),  at 3, 3, 3. 4. 4, 4, 4, 4, 20. 20, 20, 21, 21, 21, 21 (Doc. No. 1);    ¶¶ 109 (legislative history) at 27 (Doc. No. 1); ¶¶ 110 (MetLife's independent duty as an employer) at 27 (Doc. No. 1); ¶¶ 154 (MetLife's independent duty as an employer)  at 42 (Doc. No. 1).

USERRA provided DOL with this authority [38 U.S.C. § 4331(a).] to issue regulations implementing USERRA. DOL issued regulations implementing USERRA with regard to private employers and employees after a notice and comment period.  *See* 20 C.F.R. § 1002 *et seq.* The Preamble reflects that in response to a comments from <u>an association of third-party employee benefit administrators and a trade association of firms providing health insurance products</u> concerned that <u>USERRA's definition of ``employer'' was so broad as to impute liability to third parties to whom employers had delegated only ministerial responsibilities for employee benefits plans, DOL stated Congress intended that the definition of employer be broad enough to `apply to insurance companies that administer employers' life, long-term disability, or health plans, so that such entities cannot refuse to modify their policies in order for employers to comply with requirements under [USERRA]." S. Rep. No. 158, 103d Cong., 2d Sess. 42 (1993)</u>.[49] MetLife claims the foregoing language does not support Washington's allegations that MetLife is an employer under USERRA or that his claim is viable because the Senate made that comment within the context of a bill that permitted the very exclusion Washington now complains of here."[50]

Less one be sidetracked and/or confused, statutory begins with the plain language of the statue. Read naturally, the statutory definition of an employer means (1.) *any* person, institution,

---

[49] USERRA Preamble, 70 Fed.Reg. 75,246 -75,248 (Dec. 19, 2005).
[50] MetLife Memo in Support,  pg. 20 (Doc. 16-2)

organization, or other entity that pays salary or wages for work performed, (2.) *any* person, institution, organization, or other entity that has control over employment opportunities--including— (3) a person, institution, organization, or *other entity* to whom the employer has delegated the performance of employment-related responsibilities." 38 U.S.C. §4303(4)(A). MetLife's individual liability as an employer for purposes of USERRA turns on the degree of control the employer or plan sponsor has delegated to MetLife over the particular "benefit of employment" at issue. DOL's expansive reading of the statute is evidenced by the USERRA's regulations defining the term employer to include "[a] person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities, except in the case that *such entity* has been delegated functions that are purely ministerial in nature, such as maintenance of personnel files or the preparation of forms for submission to a government agency." § 1002.5(d)(1)(I). ". . . If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, [and it does, the courts] should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." **United States v. Shimer**, 367 U. S. 374, 367 U. S. 382, 383 (1961).

Rule 12(b)(6) is an exacting standard indeed. The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." **Conley v. Gibson,** 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); **Lowrey v. Texas A&M Univ. Sys.,** 117 F.3d 242, 247 (5th Cir.1997) (quoting **Conley v. Gibson,** 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (emphasis added). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. **Campbell v. Wells Fargo Bank,** 781

F.2d 440, 442 (5th Cir.1986). A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." ***Kaiser Aluminum & Chem. Sales v. Avondale Shipyards***, 677 F.2d 1045, 1050 (5th Cir.1982).

Eschewing any analysis of the plain language of the statute in question deemed the most reliable indicator of Congressional intent, purposefully neglecting to offer any analysis of the specific regulation defining the term "employer" as used throughout in the accompanying regulations, ignoring the substance of the Preamble accompanying DOL's Final containing the passage to which MetLife complains, MetLife rests its assertion it is not an employer as defined by statue solely on a series of district court rulings, each factually distinguishable from the issue presented herein, and—in any event—not binding authority in this circuit. The court takes the facts alleged as plausible, pretermitting dismissal under Rule 12(b)(6), when reasonable minds could differ about their legal outcome. ***Gonzalez v. Kay***, 577 F.3d 600 (5th Cir. 2009). In this instance, its not even a close call. Plain language in the statute, express language in the Preamble and accompanying regulations specifically addressing the scope of the term "employer" leave no doubt Congress intended the statue be read to include MetLife within the definition of an employer for purposes of USERRA.

**B. Washington's Complaint does not attempt to improperly circumvent ERISA's governing provisions**

**1. Washington's cause alleged under USERRA is not preempted by ERISA**

MetLife claims Washington is precluded from asserting his USERRA claims against MetLife, not because of ERISA's express preemption provision (which applies to conflicting state laws) but because of ERISA's exclusive enforcement provision, which provides the sole remedy for the alleged wrongful denial of an ERISA benefit claim, applies to bar assertion of any

and all other claims, **whether based on state or federal law.[51]** In support of this assertion, MetLife

claims the Supreme Court has rejected a broad reading of subsection 1144(d), ERISA's express

preemption provision which provides "[n]othing under this subchapter shall be construed to alter,

amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or

regulation issued under such law," stating that "the combination of Congress' enactment of an

all-inclusive pre-emption provision and its enumeration of narrow, specific exceptions to that

provision makes us reluctant to expand [subsection (d)] into a more general savings clause."

*See Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 104 (1983). The precise issue presented in Shaw

was whether a **state law**, a Human Rights Law. was exempt from preemption by § 514(d), which

provides that ERISA's express preemption provision,  § 514(a), shall not "be construed to alter,

amend, modify, invalidate, impair, or supersede any law of the United States." In truth, the Court

was only reluctant to expand § 514(d) into a more general saving clause for **state laws** upon

which federal laws depend for their enforcement. Nonetheless, addressing §514(d) in the context

of employment discrimination, the Shaw Court observed:

> "[t]he references to employment discrimination in the legislative history of ERISA provide no basis for an expansive construction of § 514(d). During floor debates, Senator Mondale questioned whether the Senate bill should be amended to require nondiscrimination in ERISA plans. Senator Williams replied that no such amendment was necessary or desirable. He noted that Title VII already prohibited discrimination in benefit plans, and stated: "I believe that the thrust toward centralized administration of nondiscrimination in employment must be maintained. And I believe this can be done by the Equal Employment Opportunity Commission under terms of existing law."119 Cong.Rec. 30409 (1973). Senator Mondale, "with the understanding that nondiscrimination in pension and profit-sharing plans is fully required under the Equal Employment Opportunity Act," *id.* at 30410, chose not to offer a nondiscrimination amendment. This colloquy was repeated on the floor of the House by Representatives Abzug and Dent. 120 Cong.Rec. 4726 (1974). **These exchanges demonstrate only the obvious: that § 514(d) does not preempt federal law."** . . . . Congress might well have believed, had it considered the precise issue before us, that ERISA plans should be subject only to the nondiscrimination provisions of Title VII, and not also to state laws

---

[51] MetLife Memo in Support,  pf. 18 (Doc. 16=2)

prohibiting other forms of discrimination." *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 104 (1983).

The ***Shaw*** decision affirms ERISA's "sole remedy" provision does preempt and/or is not a bar Washington's assertion of a federal right arising under USERRA as against MetLife. ***Shaw v. Delta Air Lines, Inc.***, 463 U.S. 85, 104 (1983). If there is a choice between two federal statutes, a court must analyze both to determine if they can be harmonized or are incompatible; and, if they are incompatible, this Court must then determine which one Congress meant to take precedence. Decades ago, the Supreme Court found that the Universal Military Training and Service Act trumps the Railway Labor Act, *see* ***McKinney v. Missouri-Kansas-Texas Railroad Co.***, 357 U.S. 265, 268-70, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958). There, the *McKinney* Court did not require service members to pursue the Railway Labor Act's grievance procedures before bringing a Universal Military Training and Service Act claim in court. 57 U.S. at 268-70, [78 S.Ct. 1222](). In light of the continuity of the body of case law interpreting USERRA and its predecessor statutes, there is no reason for this Court to depart from that analysis. 20 C.F.R. § 1002.2; S. Rep. 103-158, at 40 (1993); 70 Fed. Reg. 75,246 (Dec. 19, 2005) (citing Section 1002.2); ***Gross v. PPG Industries, Inc.***, 636 F.3d 884, 888 (7th Cir.2011) (same);*Crews,* 567 F.3d at 864-65 (same).

In ***McKinny*** petitioner claimed that he has been deprived of seniority rights to which he is entitled under the statute and the collective bargaining agreement in force between his employer. The question presented was whether the petitioner was required to pursue remedies possibly available under the grievance procedure in the collective bargaining agreement or before the National Railroad Adjustment Board. The Court reasoned the rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement. Although the statute does not itself create a

seniority system, but accepts that set forth in the collective bargaining agreement, it requires the application of the principles of that system in a manner that will not deprive the veteran of the benefits, in terms of restoration to position and advancement in status, for which Congress has provided. Petitioner sues not simply as an employee under a collective  bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces. For the effective protection of these distinctively federal rights, Congress provided in § 9 (d)[1] of the Act that if any employer fails to comply with the provisions of the statute, the District Court, upon the filing of a petition by a person entitled to the benefits of the Act, has jurisdiction to compel compliance and to compensate for loss of wages. The Court went on to observe that "insist that the veteran first exhaust other possibly lengthy and doubtful procedures on the ground that his claim is not different from any other employee grievance or claim under a collective bargaining agreement would ignore the actual character of the rights asserted and defeat the liberal procedural policy clearly manifested in the statute for the vindication of those rights.

The Fifth Circuit has remarked that "we cannot ignore the Congressional mandate that the statute be broadly construed to prevent discrimination of service members." *Carder*, 636 F. 3d at 177. What's more, in 2011 Congress revised the definition of the term "benefit" within the statute to include "terms, conditions, or privileges of employment," which is a "broad phrase" that the Supreme Court has held "evinces a congressional intent to strike at the entire spectrum of men and women in employment." VOW to Hire Heroes Act of 2011, Pub. L. No. 112-56, § 251, 125 Stat. 711 (2011); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)(internal quotation marks omitted). USERRA provides a "*person who is a member of, applies to be a member of, performs, has performed . . . uniformed service shall not be denied initial employment,*

*reemployment, retention in employment, promotion, or* **any benefit of employment** *by an* **employer** *on the basis of that membership.* 38 U.S.C. §4311(a).

Though the determination of Washington's USERRA rights may involve consideration of the term and conditions of an alleged "ERISA-governed plan," the rights Washington asserts are rights created by federal statute. And while not the statutory source governing Shell's LTD Plan, while USERRA accepts the terms and conditions of Shell's LTD Plan as they are, USERRA requires the determination of benefits of employment due under Shell's LTD Plan be done in such a manner that will not deprive the veteran of the benefits for which Congress has provided. USERRA's substantive protections apply to supersede provisions in Shell's LTD Plan as applied to in effect to "replace, limit, or eliminate" Washington's protected federal right not to be denied disability benefits extending under Shell's LTD Plan to similarly situated nonmilitary employee based on Washington's performance of service in the armed forces. 38 U.S.C. § 4302(b). A review of provisions of Shell's LTD Plan may be relevant but is not necessarily dispositive of the issue presented. **Duffer v. UNITED CONTINENTAL HOLDINGS, INC.**, 173 F. Supp. 3d 689 (N.D. Ill. 2016). There is no dispute Shell's LTD Plan included Pre-Existing Condition provisions, no dispute MetLife did not deny or uphold its initial claims level denial of Washington's claim for benefits is not based on its application of Pre-Existing Conditions provisions of Shell's LTD Plan, no dispute MetLife premised denial of Washington's entitlement to benefits solely on MetLife's application of an express written exclusion in Shell's LTD Plan Washington sues not simply a former employee/participant of Shell's alleged ERISA-governed LTD Plan, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces. **_McKinney v. Mo.-Kan.-Tex.R.R. Co._**, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958).

Arguing ERISA's exclusive enforcement provision applies to bar assertion of any and all other claims, **whether based on state or federal law,** MetLife seeks to re-characterize Washington's USERRA cause of action alleged against into a cause to "to recover benefits from a plan covered by ERISA, the exclusive remedy of which MetLife maintains is provided by ERISA, in 29 U.S.C. § 1132 (a)(1)(B)."[52] In order to succeed under Section 1132(a)(1)(B), the claimant must show that he or she "qualif[ies] for the benefits provided in that plan." *Id*. For this cause of action, courts do not look for equitable or other reasons the insurer should provide benefits not strictly owed under the Plan. In the present case, the Plan states "[t]his Plan does not cover any Disability which results from or is caused or contributed to by: 1. **war, insurrection, or rebellion; . . .** 5. **service in the armed forces of any nation."** That MetLife maintains Washington's disabling conditions are deemed to have result from or is caused or contributed to his service in the armed forces of any nation, application of the exclusion means there is not coverage under Shell's LTD Plan for Washington's disabling condition as written. Thus, Section 1132(a)(1)(B) would only provide relief had MetLife failed to follow the terms of the Plan, but it does not provide relief from a proper application of those terms. To the extent MetLife argues ERISA's "sole remedy" provision [29 U.S.C. § 1132 (a)(1)(B)] is Washington's exclusive remedy whether based on state or federal law, ERISA's "sole remedy" provision [Section 1132(a)(1)(B)] amounts to no remedy at all.

On the other hand, USERRA is explicit with respect to the remedies available under the statute; a court may require an employer to (1) comply with the provisions of the chapter; (2) compensate the plaintiff for lost wages or benefits; and (3) pay the plaintiff liquidated damages in the amount equal to the lost wages, if the court determines the employer's violation of the

---

[52] MetLife Memo in Support, pg. 21 (Doc. 16-2)

statute was willful. 38 U.S.C. § 4323(d). In addition, "[t]he court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." Id. at § 4323(e).

Finally, 29 U.S.C. §1144(d) states ("Nothing in this [ERISA] subchapter [on the Protection of Employee Benefit Rights] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections [addressing federal laws other than USERRA])...."). The ***Shaw*** decision affirms ERISA's "sole remedy" provision does preempt and/or is not a bar Washington's assertion of a federal right arising under USERRA as against MetLife. § 4302 (a) establishes that USERRA does not preempt/preclude any law that provides benefits beyond those established by USERRA, while subsection § 4302(b), provides USERRA does preempt/preclude laws or policies that diminish rights there under. To the extent MetLife argues ERISA's "sole remedy" provision [29 U.S.C. § 1132 (a)(1)(B)] is Washington's exclusive remedy "to recover benefits from a plan covered by ERISA" whether based on state or under USERRA, ERISA's "sole remedy" provision *reduces* benefits provided by USERRA and inconsistent with § 4302(b) and § 1002.5. To find, as MetLife suggests, ERISA's exclusive enforcement provision applies is to ignore the actual character of the rights asserted and defeat the liberal procedural policy clearly manifested in the statute for the vindication of those rights. *Id.*.  Washington's right to advance any of his claims arising from his federal protections afforded under USERRA is not preempted by ERISA's "sole remedy" provision [29 U.S.C. § 1132 (a)(1)(B)].

### 2. Washington's state law tort claim is not preempted by ERISA

In reviewing a 12(b)(6) motion, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). "In order to allege a violation of USERRA, a plaintiff must establish that [he] was subject to an adverse employment action and that [his] military service was a motivating factor in that action." *Arroyo v. Volvo Group N. Am., LLC,* No. 12 C 06859, 2014 WL 4922523, at *14 (N.D.Ill. Sep. 30, 2014)) (citing *Staub v. Proctor Hosp., 562 U.S. 411, 131 S.Ct. 1186, 1190, 179 L.Ed.2d 144 (2011)*). The Complaint alleges Washington's military service was "a substantial or motivating factor" in an adverse employment action undertaken by MetLife, an alleged employer as defined by statute; a cause for liquidated damages under 38 U.S.C. §4323 as against MetLife alleging its failure to comply with the provisions of USERRA was willful. The Compliant includes a prayer requesting the Court enter an order pursuant to 38 U.S.C. §4323 directing MetLife to compensate Washington by a paying an amount of damages equivalent to the dollar amount of "benefits of employment" to which Washington was entitled but did not receive by reason of MetLife's  violation of USERRA..The Complaint establishes Washington sues MetLife not merely as a former employee/participant of Shell's LTD Plan, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces. ***McKinney v. Mo.-Kan.-Tex.R.R. Co.***, 357 U.S. 265, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958). "Unless the complaint itself establishes the applicability of a federal-preemption defense—in which case the issue may properly be subject of a Rule 12(b)(6) motion—a defendant should ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment." (footnote omitted)" ***Fisher v. Halliburton,*** 667 F.3d 602, 610 (5th Cir. 2012). MetLife

impermissibly attempts to re-characterize Washington's cognizable claim under USERRA into one arising under ERISA.

Federal courts have interpreted § 4302(a) to mean that "Congress did not intend to replace any common law remedy that might also be available to plaintiff." *Hamovitz v. Santa Barbara Applied Research, Inc.*, No. 07-cv-00454-TFM, 2010 WL 4117270, at *7 (W.D. Pa. Oct. 19, 2010) (quoting *Slater v. Verizon Communications, Inc.*, No. 04-cv-00303-SM, 2005 WL 488676, at *4 (D.N.H.2005)) (internal quotation mark omitted); see Reyes v. Goya of Puerto Rico, Inc., 632 F.Supp.2d 142, 145 (D.P.R.2009) (noting that "nothing in the statutory language suggests that state tort law causes of action are pre-empted by USERRA"). Other federal courts have interpreted USERRA to mean it does not provide for the recovery of damages for mental anguish, pain, or suffering. *Vander Wal v. Sykes Enters.*, 377 F.Supp. 2d 738, 745 (D.N.D. 2005). USERRA's legislative history however simply does not establish that Congress intended it to be a veteran's exclusive means to combat discrimination based on military status. See *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (noting that "`the purpose of Congress is the ultimate touchstone' in every pre-emption case") (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)).

USERRA provides that "[n]othing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter." 38 U.S.C. § 4302(a). Sections 4302(a) suggests that because USERRA recognizes that state governments may provide greater or additional rights or benefits to veterans, USERRA favors rather than restricts a plaintiff's ability to bring state law claims to redress any harm.

Washington's claim for intentional infliction of emotional distress arises from a legal duty independent of ERISA. MetLife was not performing a ERISA Claims fiduciary function when at the Shell's Company's behest it continued its wrongful denial of Washington's claim refusing to use its unfettered power delegated to it as an employer for purposes of USERRA, to modify Shell's LTD Plan in order that Shell could comply with its own non-delegable requirements under USERRA, intentionally ignoring its own statutory obligations owed to substitute USERRA's substantive protections in place of Shell's Armed Services Exclusion that as applied served to "replace, limit, or eliminate" Washington's protected federal right not to be denied disability benefits, otherwise extending under the Plan to similarly situated nonmilitary employee, based on Washington's performance of service in the armed forces, kicking the day of reckoning down the road delaying Washington's entitlement to benefits of which MetLife could offer no basis in fact or law to deny, to assist Shell in forcing Washington to accept a much smaller severance package upon terminating his employment with the Shell.  The Complaint as currently constituted does not allege a claim seeking "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan" pursuant to ERISA Section 29 U.S.C. §§ 1132(a)(1)-(4).

Washington's lIED claim is not based on any state law that seeks to mandate the structure or content of the ERISA plan or how it is administered; Washington's claim for lIED relief does not rely on any state law that dictates "the terms of a plan or the type of benefits a plan may provide," imposes "reporting, disclosure or funding requirements," or "affect[s] calculation of benefits;" Washington's IIED claim is not based on any state law that would bind the plan administrator to particular choices with respect to the plan or that would preclude uniform administrative practices. Finally, the determination as to whether or not MetLife's failure, as an

employer for purposes of USERRA, to adhere to its duty not to deny any benefit of employment to an employee based upon the employee's status as a former armed forces service member, to adhere to its statutory duty to substitute USERRA's substantive protections in place of Shell's Armed Services Exclusion that as applied served to "replace, limit, or eliminate" Washington's protected federal right not to be denied disability benefits otherwise extending under the Plan to similarly situated nonmilitary employee based on Washington's performance of service in the armed forces was intentionally tortious does not require interpretation of the Plan. Washington's IIED is not an attempt to enforce his rights under ERISA or under the ERISA plan, therefore Washington's IIED claim is not an alternative enforcement mechanism to §502, Washington's IIED claim is thus not related to an ERISA plan under § 514. Washington's lIED claim is not preempted under §514. ***Darcangelo v. Verizon Communications Inc.***, 292 F.3d 181 (4th Cir. 2002). Should this Court preempt Washington's cause for IIED arising from MetLife's intentional failure, undertaken at the Shell's behest, to adhere to its statutory duties imposed by USERRA in order to assist Shell in forcing Washington to accept a much smaller severance package terminating his employment with the Shell be deemed preempted by ERISA, MetLife will have discovered a sweet spot to engage intentionally tortious conduct arising out of its statutory obligation under USERRA with impunity.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendant' Metropolitan Life Insurance Company's Rule 12(b)(6) Motion to Dismiss in its entirety.

**RESPECTFULLY SUBMITTED**:

By: Jerome J. Pellerin
JEROME J. PELLERIN, ESQ. (17739)
9024 BELFAST STREET
NEW ORLEANS, LOUISIANA 70118
Attorney for Gregory Washington