UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**GREGORY WASHINGTON**           CIVIL ACTION NO: 2:17-cv-08825-

**VERSUS**                      SECTION: **Jane Triche Millazo**

**SHELL OIL COMPANY and**       MAGISTRATE: **Michael North,**
**METROPOLITAN LIFE**
**INSURANCE COMPANY**

    **Defendants**
**************************************************************************

**PLAINTIFF'S FIRST SUPPLEMENTAL
MEMORANDUM IN OPPOSITION TO
METROPOLITAN LIFE INSURANCE COMPANY'S
RULE 12(b)(6) MOTION TO DISMISS**

    **NOW INTO COURT**, through undersigned counsel, comes Gregory Washington ("Washington") who files his First Supplemental Memorandum in Opposition to Metropolitan Life Insurance Company's Rule 12(b)(6) Motion to Dismiss and respectfully avers:

### Granting Washington an Opportunity to Amend Would Not Be Futile

    MetLife claims the Release as issue herein covers a broad array of claims "pertaining to or arising from [Washington's] employment or termination of employment with [Shell],"argues the Release specifically encompasses "federal laws covering discrimination, including those based upon . . . disabled or Vietnam-era veteran status," argues the causes under USERRA alleged against it herein fall within the scope of the release.[1] MetLife further claims "[i]t would be futile to permit Washington an opportunity to replead his claims as ERISA claims because Washington waived those claims through the Release. *See* Ex. A."[2]

---

[1] MetLife Memo in Support, pg. 3-4  (Doc. 16- 2)
[2] MetLife Memo in Support, pg. 15  (Doc. 16- 2)

While a "stipulation gives the third party beneficiary the right to demand performance from the promisor" (*See* La. CC art. 1981), MetLife makes no showing nor can it make any showing Shell, the contracting party to the Release, intended to stipulate a benefit for MetLife, a third party beneficiary under the Release. (*See* La. CC art. 1978 "A contracting party may stipulate a benefit for a third person called a third party beneficiary." Quite to the contrary, Washington attaches Shell's Response to his Memorandum in Opposition to Shell Oil Company's Motion to Dismiss which unequivocally states "[w]hile the agreement does not affect ***any*** claim [USERRA or ERISA] that Mr. Washington may have against Met-Life, it is our position that it bars any discrimination or other employment-related claims against Shell, including any claim under USERRA."[3] And while a "stipulator, for the benefit of the third party, may demand performance from the promisor, (*See* La. CC art. 1981), Shell makes no demand in these proceedings for and on behalf of MetLife that Washington render performance unto MetLife under the Release. A non party to the Release bearing the burden of establishing the Release, an affirmative defense, MetLife simply fails to meet its initial burden of establishing the Release. MetLife's assertion causes alleged against it under USERRA are barred by the Release, its assertion "[i]t would be futile to permit Washington an opportunity to replead his claims as ERISA claims because Washington waived those claims through the Release."[4] are wholly unsupported in law.

### Washington Requests an Opportunity to file an Amended Complaint

To the extent this Court finds a deficiency in the Original Complaint, Washington request this court grant him an opportunity to file an amended complaint. Washington shows he can allege no less than two claims for equitable relief under ERISA's so-called "catch-all" provision.

---

[3] Washington Memo in Opposition (Doc. 33-2)
[4] MetLife Memo in Support, pg. 15 (Doc. 16- 2)

**A. Equitable Estoppel**

By letter dated December 9, 2015, MetLife denied Washington's claim for benefits arising from his disabling, PTSD/depression, conditions based solely on its application of the war exclusion stating "[b]ased on review of the behavioral health evaluation the PTSD is war related as most or all of your trauma relates to (OEF) . . . Although medicals supports for the PTSD and depression these conditions are noted to be war related and are subject to the war exclusion in the plan;" stated MetLife determined Washington's claim was "[t]herefore, . . . denied effective October 13, 2015 as the medical information received and reviewed does not support the definition of disability throughout the entire elimination period and is war related and considered an exclusion according to the Plan." Washington timely appealed.

MetLife claims it received Washington's intent to appeal on April 15, 2016, received an appeal request form on May 23, 2016. Under applicable regulations, MetLife had 45 days to resolve the appeal with the option to extend that period for an additional 45 days. *See* 29 C.F.R. § 2560.503-1(i)(1)(i), (i)(3)(i); **Heimeshoff,** 134 S. Ct. at 613 (where a claimant appeals a denial of disability benefits, "[t]he plan has 45 days to resolve that appeal, with one 45-day extension available"). MetLife availed itself of the 45-day extension and thus extended its deadline to resolve Washington's appeal at the latest to August 22, 2016.

A cause of action accrues "when the plaintiff can file suit and obtain relief." **Heimeshoff v. Hartford Life & Acc. Ins. Co.,** 134 S. Ct. 604, 610 (2013). Under ERISA, that moment occurs "either at the time benefits are actually denied, or when the insured has reason to know that the claim has been denied." **Wise v. Verizon Commc'ns, Inc.,** 600 F.3d 1180, 1188 (9th Cir. 2010) (internal quotation marks and citation omitted). The Supreme Court has stated expressly that when a plan fails to resolve an internal appeal within the time provided under ERISA

regulations, "the participant 'shall be deemed to have exhausted the administrative remedies'" and "is entitled to proceed immediately to judicial review." *Id.* at 613 (quoting 29 C.F.R. Washington's ERISA cause of action arising from his appeal of MetLife's initial claims level denial dated December 9, 2015 accrued upon the expiration of the August 22, 2016 deadline

MetLife is the Third Party Administrator responsible for making initial eligibility determinations under an LTD Plan underwritten by it, is the party responsible for reviewing appeals from initial claims level denials generated in house, is the Insurance Carrier liable to pay benefits due under Shell's LTD Plan. MetLife's inherent structural conflict of interest in the administration of benefit claims under Shell's LTD Plan is more than palpable. To maintain strict control over its risk of loss which translates to higher profit margins for MetLife, MetLife is financially incented to conduct its own review of denied claims internally which in turn translates to an inherently unfair review of its own initial claims level denial of a Claimant's claim. Absent an independent third party review of MetLife's initial denial of a Claimant's claim, MetLife can proffer material misrepresentations to mislead the Claimant as to the status of his claim. much like it did herein, without fear of reprisal or rebuke save the Claimant initiating a cause of action in a court of law. On paper, MetLife serves as a fiduciary with respect to Shell's LTD Plan; in reality, MetLife acts much like the proverbial fox guarding the hen house.

On September 9, 2016, MetLife sent its decision on his initial appeal by letter almost three weeks past the August 22, 2016 deadline. MetLife's letter contained a number of material misrepresentations all designed to mislead Washington as to the status of his claim including a statement "Mr. Washington has exhausted his administrative rights under the Plan with respect to medical conditions **not subject to the Plan's war and/or service in the armed forces exclusions.**" MetLife knew Washington's ERISA cause of action arising from its initial claims

level denial of Washington's claim for benefits arising from his disabling, PTSD/depression, conditions on December 9, 2015 based solely on its application of the war exclusion accrued on August 22, 2016. MetLife nonetheless offered the foregoing misrepresentation with the specific intent to deceive and/or mislead Washington into believing its initial claims level denial had not considered Washington's disabling, PTSD and/or /depression conditions in reaching its decision on December 9, 2015; to mislead Washington into believing his ERISA cause of action arising from MetLife's application of the war exclusion in denying Washington's claim for benefits arising from his disabling, PTSD/depression, conditions on December 9, 2015 had not accrued on August 22, 2016.

Premised on the misrepresentation its initial claims level denial had not considered Washington's disabling, PTSD and/or depression conditions when MetLife knew in fact it had, MetLife extended Washington the right to "appeal this decision made regarding **his psychiatric conditions** with regard to the Plan's war **or** service in the armed forces of any nation exclusions by sending a written request for appeal to MetLife." MetLife extension of appeal rights was designed to further mislead Washington into believing his ERISA cause of action arising from MetLife's application of the war exclusion in denying Washington's claim for benefits arising from his disabling, PTSD/depression, conditions on December 9, 2015 had not accrued upon the expiration of the August 22, 2016 deadline, to create the inference MetLife's denial of his claim could have been based in part on MetLife's application of the armed services exclusion post expiration of the August 22, 2016 deadline in an attempt to obfuscate the fact Washington's ERISA cause of action with respect to MetLife's application of the war exclusion accrued upon the expiration of the August 22, 2016 deadline. In reliance on MetLife's misrepresentations as to the status of Washington's claim set out in its decision letter dated almost three weeks past the

August 22, 2016 deadline, because exhaustion of administrative procedures is a prerequisite to bring suit under the Plan, Washington filed a second appeal. In response thereto, MetLife acknowledged what it knew on August 22, 2016 by declaring on May 1, 2017 "[it was] no longer relying in any way on the Plan's exclusion for disabilities that result from or are caused or contributed to by "war, insurrection, or rebellion ..." in denying Washington's claim; declaring its denial of Washington's claim for benefits is now "*based upon the Plan's entirely separate and independent exclusion for disabilities that result from or are caused or contributed to by service in the armed forces of any nation."* In so doing, MetLife acknowledged denial of Washington's claim for benefits on December 9, 2015 arising from PTSD/depression conditions MetLife acknowledged were disabling based solely on its application of the war exclusion was indeed wrongful; MetLife acknowledged it knew as early as August 22, 2016 Washington was entitled to no less than $68,000.00 in benefits from July 1, 2015 through August 22, 2016 arising from PTSD/depression conditions MetLife acknowledged were disabling based on MetLife's application of the war exclusion which MetLife acknowledges was wrongful.

"[T]o recover under an equitable estoppel theory, an ERISA beneficiary `must establish a material misrepresentation, reasonable and detrimental reliance upon the representation, and extraordinary circumstances.'" **_Keith v. Metropolitan Life Insurance Company_**, Civil Action No. H-15-1030 (S.D. Tex. June 9, 2017) citing **_Continental Insurance Co. v. Dawson,_** No. 3:13-cv-04150-M, 2017 WL 1196857, at *6 (N.D. Tex. March 31, 2017) (citing **_Weir v. Federal Asset Disposition Association,_** 123 F. 3d 281, 290 (5th Cir. 1997).

Ensconced with unbridled the power vested in it by Shell, fueled by its own financial interest, aided by an inherent and structural conflict of interest, MetLife engaged in overt acts of deception, proffered material misrepresentations all designed to mislead Washington as to the

status of his claim. As result of his reliance on MetLife's misrepresentations, Washington finds himself with MetLife claiming his entitlement to any benefits relative to his PTSD/depression conditions MetLife acknowledged were disabling are now governed by MetLife's application of the "*Plan's entirely separate and independent exclusion for disabilities that result from or are caused or contributed to by service in the armed forces of any nation*" retroactive to July 1, 2015. MetLife makes this claim in spite of the fact Washington's ERISA cause of action arising from PTSD/depression conditions MetLife acknowledged were disabling which claim MetLife denied on December 9, 2015 based on its application of the war exclusion of which MetLife acknowledges was wrongful accrued on August 22, 2016 deadline. MetLife thus claims, as proximate result of MetLife's material misrepresentations and Washington's reliance thereon, Washington's entitlement to no less than $68,000.00 in benefits from July 1, 2015 through August 22, 2016 arising from his claim based on PTSD/depression conditions MetLife acknowledged were disabling and resulting from MetLife's application of the war exclusion of which MetLife acknowledges was wrongful magically simply disappeared. MetLife should, at a minimum, be estopped from retroactively disavowing Washington's entitlement to no less than $68,000.00 in benefits from July 1, 2015 through August 22, 2016 arising from PTSD/depression conditions MetLife acknowledged were disabling based on MetLife's application of the war exclusion which MetLife acknowledges was wrongful.

### B. Express language of the Plan mandates MetLife bore a Duty to Apply Plan Provisions in a Non Discriminatory Manner to all Similarly Situated Participants

Pre Existing Conditions provisions of Shell's LTD Plan extend covered benefits to military and nonmilitary employees alike arising from any Disability, not otherwise excluded under Shell's LTD Plan, sustained caused by, contributed to by, or resulting from a Pre-Existing Condition. Washington sustained a Pre Existing condition, i.e., blunt force trauma sustained

seven years prior; sought benefits under the Plan for a disabling condition, delayed onset of disabling PTSD conditions triggered by material changes in the work environment, deemed to have been be caused by, contributed to or resulting from his Pre-Existing Condition seven years earlier. Pre Existing Conditions provisions extend covered benefits to a *nonmilitary* employee's claim arising from Washington's exact same disabling conditions, delayed onset of disabling PTSD conditions triggered by material changes in the work environment, deemed to have been be caused by, contributed to or resulting from Pre-Existing Condition, i.e., blunt force trauma sustained seven years earlier while not in the armed services. Since covered benefits extend under Shell's LTD Plan to similarly situated nonmilitary employee arising from any Disability, not otherwise excluded under Shell's LTD Plan, deemed to result from or be caused or contributed to a Pre Existing Condition occurring while not in the armed services, covered benefits extend to a similarly situated nonmilitary employee under Pre-Existing Condition provisions irrespective of the nature of the underlying Pre-Existing injury and/or nature of the resultant disabling condition caused or contributed to a Pre Existing Condition. That Pre Existing Conditions provisions extend covered benefits to irrespective of the nature of the underlying Pre-Existing injury and/or nature of the resultant disabling condition caused or contributed to a Pre Existing Condition, military and nonmilitary employee's underlying injuries, i.e., blunt force trauma sustained seven years earlier, are the same, military and nonmilitary employee's resultant disabling condition caused or contributed to the same Pre Existing Condition, delayed onset of disabling PTSD conditions triggered by material changes in the work environment, are the same, in this instance, *nonmilitary* and *military* Participants are *similarly situated*.

Shell vested MetLife with full and absolute discretion to "*construe and interpret all provisions of the Plan and the Component Programs, including the discretion to resolve*

***ambiguities, inconsistencies, or omissions conclusively; provided, however, <u>that all such discretionary interpretations and decisions will be applied in a uniform and nondiscriminatory manner to all Participants, beneficiaries, and Covered Dependents who are similarly situated</u>.*** When applying the armed services exclusion, MetLife based its denial of Washington's claim not on the nature [blunt force trauma to the head] of the underlying Pre-Existing Condition sustained nor the resultant [PTSD] disabling condition manifesting itself seven years later, but rather based solely on the Washington's alleged status at the time the underlying trauma is said to have been sustained. MetLife's application of the armed services exclusion turns Pre Existing Conditions coverage extending under the LTD Plan with respect to the same disabling condition deemed caused by, contributed to by or resulting from Pre-Existing Conditions treating *similarly situated* members of the military and *similarly situated* non-military employees the same into one that treats a *similarly situated* member of the military disabling conditions arising from Pre-Existing Conditions considerably less favorably than that of a *similarly situated* nonmilitary employee's disabling conditions of arising from the exact same Pre-Existing Conditions, arising from the exact same resulting disabling condition. MetLife's application of the armed services exclusion has the effect of treating a *similarly situated* military Participant in a discriminatory manner contrary to express language in the Plan mandating its provisions shall be interpreted and applied in a uniform and nondiscriminatory manner to all Participants *similarly situated*.

   That ERISA Section 404(a) specifies "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries," and "for the exclusive purpose of: (i) providing benefits to participants; . . ." 29 U.S.C. § 1104(a)(1)(A), MetLife bears a duty under the Plan to resolve **ambiguities, inconsistencies or omissions in the Disability Plan conclusively**, provided however, all such discretionary interpretations and decisions are applied

in a uniform and nondiscriminatory manner to all Participants *similarly situated,* MetLife's application of the armed services exclusion[5] serves to negate Washington's entitlement to benefits otherwise extending under Pre Existing condition provisions of the Plan to a *similarly situated* non military Participant, MetLife should be estopped from refusing to apply Pre Existing Conditions provisions of the Plan in a uniform and nondiscriminatory manner to all *similarly situated* Participants as mandated by express language in the Plan.

## CONCLUSION

To the extent this Court finds a deficiency in the Original Complaint, Washington request this court grant him an opportunity to file an amended complaint; Washington shows he can allege no less than two claims for equitable relief under 29 U.S.C. § 1132(a)(3).

**RESPECTFULLY SUBMITTED**:

By: Jerome J. Pellerin
JEROME J. PELLERIN, ESQ. (17739)
9024 BELFAST STREET
NEW ORLEANS, LOUISIANA 70118

## CERTIFICATE OF SERVICE

I hereby certify that on this 22st day of January, 2018, a copy of the above and foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which then sent notification of such filing to the all counsel of record:

/s/Jerome J. Pellerin

---

[5] This situation described herein is the exact reason USERRA's legislative history indicates Congress intended the definition of "employer" [be interpreted broadly] enough to apply to insurance companies [like MetLife] that administer employers' life, long-term disability, or health plans, so that such entities [like MetLife] cannot refuse to modify their policies in order for employers to comply with requirements under [USERRA]." S. Rep. No. 158, 103d Cong., 2d Sess. 42 (1993). Washington has a protected federal right under USERRA not to be denied disability benefits otherwise extending under the Plan to similarly situated nonmilitary Participant based on Washington's performance of service in the armed forces. **Absent MetLife being considered an employer for purposes of USERRA, Washington's ability to enforce his protected federal right rests in MetLife's hands, rests in the hands of the proverbial "Fox" to whom Shell has entrusted full discretion to "guard the hen house."**