UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY WASHINGTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-8825** |
| **SHELL OIL CO. ET AL.** | **SECTION: "H"(5)** |

## ORDER AND REASONS

Before the Court are Defendant Shell Oil Company's ("Shell") Motion to Dismiss (Doc. 15) and Defendant Metropolitan Life Insurance Company's ("MetLife") Motion to Dismiss (Doc. 16). For the following reasons, Shell's Motion is DENIED, and MetLife's Motion is GRANTED IN PART.

## BACKGROUND

Plaintiff Gregory Washington is a combat war veteran who alleges that he developed Post Traumatic Stress Disorder (PTSD) while working for Defendant Shell Oil Company ("Shell") several years after his service, due in part to a stressful work environment and harassment from coworkers. Plaintiff applied for short term disability based on his PTSD and other diagnoses

1

through Shell's disability plan, which was administered by Defendant Metropolitan Life Insurance Company ("MetLife"). MetLife approved and paid Plaintiff's claim for short term disability benefits. Plaintiff then filed a claim for long term disability, which MetLife denied based on its exclusion for disabilities caused by war. MetLife later denied Plaintiff's appeal of that decision on the ground that the plan excluded injuries that were a result of service in the armed forces. Plaintiff claims that the denial was in violation of the Uniformed Services Employment Reemployment Rights Act (USERRA), which protects members of the military from discrimination by an employer on the basis of military service.

After MetLife denied Plaintiff's requests for disability benefits, Plaintiff signed an agreement with Shell in conjunction with an offer of severance. In the agreement, he expressly waived the right to bring suit for any matter pertaining to his employment, including issues involving discrimination based on veteran status (the "Release"). Plaintiff alleges that this waiver was signed under duress, was not knowing, and is in violation of USERRA.

Plaintiff brings claims against Defendants for violation of USERRA, recission of the Release, and intentional infliction of emotional distress. Defendants have each filed a separate Motion to Dismiss the claims against them. This Court will consider each motion in turn.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[8]

## LAW AND ANALYSIS

### A. Shell's Motion to Dismiss

Shell moves for dismissal of Plaintiff's claims against it seeking rescission of the Release and damages for violation of USERRA. Shell argues that

---

[1] Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

[4] *Iqbal*, 556 U.S. at 678.

[5] *Id.*

[6] *Lormand*, 565 F.3d at 255–57.

[8] Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

Plaintiff's claims should be dismissed because the Release unequivocally waives his right to bring claims under USERRA. There is no dispute that Plaintiff signed the Release, which, as quoted in the Complaint, unambiguously waived Plaintiff's right to bring a lawsuit for claims arising out of his employment.[9] Indeed, the Release expressly waives Plaintiff's right to bring a claim for discrimination based on veteran-status.[10] The Complaint also admits that Plaintiff knew about his rights under USERRA prior to signing the Release. The Complaint alleges that Plaintiff was paid almost $30,000 in exchange for signing the release.

USERRA states that it supersedes any "contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided" by it.[11] It further states, however, that it is not intended to "supersede, nullify or diminish any . . . contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided" by USERRA.[12] "Therefore, the critical inquiry is whether the Release is exempted from the operation of [USERRA] because the rights it provided to [Plaintiff] were more beneficial than the rights that he waived."[13]

As Plaintiff correctly points out, Defendant's argument that the Release prevents Plaintiff's claims for violation of USERRA is an affirmative defense. In order to dismiss a claim based on an affirmative defense, the defense "must

---

[9] Doc. 1, p.38.
[10] *Id.*
[11] 38 U.S.C. § 4302(b).
[12] *Id.* § 4302(a).
[13] Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1107 (6th Cir. 2010).

appear on the face of the complaint."[14] Defendant argues that the Complaint clearly establishes that the language of the Release was clear and unequivocal and that the Release was made for valuable consideration. Even so, courts have interpreted the waiver of USERRA rights to require a subjective belief that the consideration provided by the waiver agreement was more beneficial than the rights provided by USERRA.[15] The Complaint expressly alleges that Plaintiff could not determine whether the rights provided in the Release were more beneficial than the rights provided by USERRA because of MetLife's failure to provide reasons for its adverse disability benefits decision.[16] He also alleges that he signed the Release "not because he believed that the rights provided in the Agreement were more beneficial than his USERRA rights, but rather because of the severe financial distress and emotional duress he continued to suffer" as a result of the Defendants' actions.[17] A waiver of USERRA rights must "be clear, convincing, specific, unequivocal, and not under duress."[18]

---

[14] Alexander v. Verizon Wireless Servs., L.L.C., 875 F.3d 243, 249 (5th Cir. 2017).

[15] *See Wysocki*, 607 F.3d at 1108 ("Clearly, the ability to waive their USERRA rights without unnecessary court interference, if they believe that the consideration they will receive for waiving those rights is more beneficial than pursuing their rights through the courts, is both valuable and beneficial to veterans."); Landers v. Dep't of Air Force, 2011 WL 5983577, 117 M.S.P.R. 109, 116 (M.S.P.B. Nov. 30, 2011) ("[T]here is enough evidence in the record to find that the appellant signed the settlement agreement with the belief that the consideration provided by the agreement was more beneficial than the preservation of his rights to bring additional claims against the agency."); Vahey v. Gen. Motors Co., 2012 WL 9390844, at *4 (D.D.C. Mar. 1, 2012) ("In determining whether plaintiff believed the rights he received by signing the Release were more beneficial than the rights he gave up by signing it, the Court must try to enforce the intentions of the parties as expressed in the language of the Release.").

[16] Doc. 1, p.55.

[17] Doc. 1, p.47.

[18] Conners v. Billerica Police Dep't, 679 F. Supp. 2d 218, 225 (D. Mass. 2010); *see* Breletic v. CACI, Inc., 413 F. Supp. 2d 1329, 1337 (N.D. Ga. 2006) ("[T]he legislative history of the USERRA quoted above indicates that a person can waive his or her rights under the

Accordingly, Defendant's affirmative defense does not appear on the face of the Complaint, and Defendant has therefore not shown grounds for dismissal.

## B. MetLife's Motion to Dismiss

Next, MetLife moves for dismissal of the claims against it for violation of USERRA, recission of the Release, and the state law tort of intentional infliction of emotional distress. At the outset, MetLife's Motion to Dismiss repeats the arguments made by Shell that were rejected above. However, MetLife also puts forth two additional arguments: (1) that it is not an "employer" under the terms of USERRA and therefore cannot be liable for its violation, and (2) that ERISA is Plaintiff's exclusive remedy and precludes his claims herein. This Court will address its arguments in turn.

USERRA imposes liability on employers who discriminate against and "den[y] initial employment, reemployment, retention in employment, promotion, or any benefit of employment . . . on the basis of" an individual's involvement in the uniformed services.[19] USERRA defines an "employer" as: "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities."[20] This is defined to include "a person, institution, organization, or other entity to whom the employer has delegated the performance of employment-related responsibilities."[21] Plaintiff argues that MetLife is an employer under this

---

USERRA, but any such waiver must 'be clear, convincing, specific, unequivocal, and not under duress. Moreover, only known rights which are already in existence may be waived.'").

[19] 38 U.S.C. §§ 4311(a), (c).
[20] *Id.* § 4303(4)(A).
[21] *Id.* § 4303(4)(A)(i).

6

definition because Shell delegated to it the authority and responsibility of administering its disability plan.

The issue of whether a disability plan administrator is an employer under the terms of USERRA appears to be one of first impression. The question before the Court then is whether the administration of a disability plan constitutes the "performance of an employment-related responsibility." In engaging in statutory interpretation, the Court considers first the language of the statute, "the specific context in which that language is used, and the broader context of the statute as a whole."[22] Under its plain terms, the administration of a disability plan is the performance of an employment-related responsibility. The implementing regulations of USERRA support such an interpretation in explaining that the only exception to the broad definition of "employer" are entities that are delegated functions that "are purely ministerial in nature, such as maintenance of personnel files or the preparation of forms for submission to a government agency."[23] The administration of a disability plan, which necessarily involves deciding who is entitled to benefits, is not purely ministerial in nature.

MetLife argues that in order to be an employer under USERRA the defendant must be able to affect the employment status of the plaintiff, including hiring and firing. In support of its argument, however, MetLife cites only to case law in which the plaintiffs complain that their employment status was affected in violation of USERRA.[24] In those cases, the courts looked to

---

[22] Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).
[23] 20 C.F.R. § 1002.5.
[24] Estes v. Merit Sys. Prot. Bd., 658 F. App'x 1029, 1030 (Fed. Cir. 2016) (terminated); Jolley v. Dep't of Justice, 602 F. App'x 805, 806 (Fed. Cir. 2015) (forced to retire); Jones v.

whether the defendants had the authority to affect the plaintiff's employment status.[25] Here, Plaintiff does not complain that MetLife affected his employment status, but rather, that he was denied a benefit of employment.[26] The case law cited by MetLife actually supports this Court's finding that MetLife is an employer under USERRA because MetLife had the requisite authority and control to deny Plaintiff a benefit of employment.[27] Accordingly, this Court holds that MetLife is an employer under the terms of USERRA, and its argument for dismissal on these grounds therefore fails.

MetLife next argues that Plaintiff cannot succeed on his claim for the violation of USERRA because ERISA is his exclusive remedy for the wrongful denial of benefits under a disability plan. This Court disagrees. ERISA expressly states that, "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States .

---

Wolf Camera, Inc., No. 96-CV-2578-D, 1997 WL 22678, at *1 (N.D. Tex. Jan. 10, 1997) (terminated).

[25] *See Estes*, 658 F. App'x at 1030 (holding that defendant was not a co-employer for discharge claim when it did not control employer's decision to fire plaintiff); *Jones*, No. 1997 WL 22678, at *2 (holding that defendants were employers for discriminatory discharge claim when they had authority to fire); Angiuoni v. Town of Billerica, 999 F. Supp. 2d 318, 322 (D. Mass. 2014) (holding that defendant was employer for discriminatory discharge claim because she was "delegated the responsibility of placing Department employees on administrative leave and recommending them for termination").

[26] USERRA imposes liability on employers who discriminate against and "den[y] initial employment, reemployment, retention in employment, promotion, or any benefit of employment . . . on the basis of" an individual's involvement in the uniformed services. 38 U.S.C. §§ 4311(a), (c).

[27] *See* Rimbey v. Mucky Duck, Inc., No. 217-103, 2017 WL 2812507, at *3 (M.D. Fla. June 29, 2017) ("[P]laintiff's supervisor . . . actually made the adverse decision to reduce plaintiff's salary in the amount of his military benefits (thus controlling plaintiff's employment opportunities). These allegations put [the supervisor] within the definition of 'employer' under the USERRA.").

. . or any rule or regulation issued under any such law."[28] A holding that ERISA precludes Plaintiff from pursuing a claim for discrimination in an ERISA-governed plan would certainly invalidate and impair the rights provided to him in USERRA.[29] In addition, Plaintiff does not assert that MetLife failed to follow the terms of the Plan, but rather, that the Plan is discriminatory and does not provide him coverage as written. "ERISA does not . . . itself proscribe discrimination in the provision of employee benefits."[30] Therefore, the holding requested by Defendants would leave Plaintiff without a remedy at all. Accordingly, this argument too fails.

Finally, MetLife argues that ERISA preempts his claim for state law intentional infliction of emotional distress. Plaintiff's counsel admitted at oral argument that he had no defense to Defendants' preemption argument. Accordingly, Plaintiff's state law claims for intentional infliction of emotional distress are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Shell's Motion is DENIED, and MetLife's Motion is GRANTED IN PART. Plaintiff's claim for intentional infliction of emotional distress is DISMISSED.

---

[28] 29 U.S.C. § 1144.
[29] *See* Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 102 (1983) ("[D]isruption of the enforcement scheme contemplated by Title VII would, in the words of § 514(d), 'modify' and 'impair' federal law."); Shea v. Iron Workers Dist. Council of New England Pension Fund, 158 F. Supp. 3d 20, 29 (D. Mass. 2016) ("USERRA is a federal statute not preempted by ERISA.").
[30] *Shaw*, 463 U.S. at 91.

New Orleans, Louisiana this 12th day of June, 2018.

_____
 **JANE TRICHE MILAZZO**
 **UNITED STATES DISTRICT JUDGE**